UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA

    Plaintiff,

                              Civil Case No. 06-11664
                              Crim. Case No. 01-80935

v.

JASON D. HAWTHORNE

    Defendant.

_____/

**OPINION AND ORDER DENYING "MOTION TO CORRECT OR VACATE SENTENCE AS IN VIOLATION OF LAW PURSUANT TO 28 U.S.C. § 2255"**

    Defendant Jason D. Hawthorne, presently incarcerated pursuant to his criminal conviction of felon in possession of a firearm, 18 U.S.C. 922(g)(1), seeks to correct or vacate his sentence pursuant to 28 U.S.C. § 2255.  He contends that his trial counsel failed to communicate a plea offer on the eve of trial that Defendant would have accepted, which, if accepted would have resulted in less incarceration time than the sentence imposed after his jury trial.  After appointing counsel, the court conducted evidentiary hearings on December 5, 2006 and January 30, 2007.  The court will, for the reasons stated below, deny the petition.

**I.  BACKGROUND**

    Defendant testified as follows.  After his jury trial, he received a sentence of 52 months.  (Tr. II at 66.)  During pretrial proceedings, he rejected a plea offer on April 12,

2005, which called for either 51 to 63 months or 37 to 46 months, depending on a determination of his criminal history guideline score.  (Tr. II at 68-69.)  He conferred with George Cushingberry, his trial counsel, and he rejected the plea offer because he felt he was not given any time off for acceptance of responsibility.  (Tr. II at 69-70.)  On the first day of trial on May 23, 2005, Defendant again discussed a plea with Cushingberry, who told him the government wanted to know what Defendant wanted as a plea.  (Tr. II at 70.)  Defendant asked Cushingberry what he thought of 14 months and the conversation ended.  (Tr. II at 70.)  When Cushingberry returned to the lock-up area, he informed Defendant that the prosecutor said he could not go below 37 to 46 months.  (Tr. II at 71.)  Cushingberry reiterated this statement when Defendant queried him about a plea in the courtroom.  (Tr. II at 71.)  On the second day of trial, Defendant only had contact with Cushingberry in the courtroom and they did not discuss plea offers.  (Tr. II at 72.)

Defendant testified that he later heard of a lower plea offer of about 18 months from Feia Murdoch, whose testimony is summarized below.  (Tr. II at 72-73.)  Defendant was already convicted and he "was shocked" to learn of the offer.  (Tr. II at 73.)  Defendant did not raise the issue of the uncommunicated plea at his sentencing hearing or on appeal because he "didn't think that [he] had any issues to raise."  (Tr. II at 74.)

On cross-examination, Defendant stated that he spoke with Cushingberry about taking a plea on at least three occasions.  (Tr. II at 79.)  He admitted that he has lied in the past, including misrepresenting his identity when he was attempting to get out of trouble.  (Tr. II at 86-87.)

Cushingberry presented a different version of relevant events and testified as follows. He has practiced part-time as an attorney for fourteen years, balancing his criminal defense work with his duties as a public official.[1] (Tr. I at 6-7). He has appeared in at least six cases in federal district court and in about 600 cases in state court. (Tr. I at 7, 17.) He often receives plea offers for his clients, and his routine and standard practice is to "immediately communicate [a plea offer] to my client." (Tr. I at 17.)[2] He recalled the government making three or four plea offers through the course of Defendant's case. (Tr. I at 10.) Cushingberry "communicated those [pleas] in succinct terms to [Defendant] each time." (Tr I. at 10.)

On the eve of trial, Cushingberry received a plea offer of 18 months, which he claims Defendant rejected because Defendant was "pretty adamant that he believed that his girlfriend's testimony would absolve him and he wasn't interested [in the plea.]" (Tr. I at 13.) Cushingberry averred that he communicated this offer to Defendant on the first and second days of trial:

> I asked the court for a recess. I went downstairs to the Marshal's Office and I communicated it to him on the first day. And on the second day I communicated it again to him right after we had picked the jury at the table. In fact, the Judge specifically asked me to keep my voice down, if I remember correctly.

(Tr. I at 14.) At the earlier meeting, Cushingberry met alone with Defendant in the lock-

---

[1]Cushingberry served in the Michigan Legislature from 1974 to 1982, as a Wayne County Commissioner from 1986 to 2002 and he was again elected to the Legislature in 2004. (Tr I at 7.)

[2]Cushingberry has also handled over one hundred civil cases in state and federal court and he makes it a practice to communicate all settlement offers immediately to his clients. (Tr I at 17.)

3

up area of the courthouse. (Tr I. at 21.)

Agent Kevin Zott worked on Defendant's case and was present at trial. (Tr. II at 106.) He recalled discussing a plea offer for Defendant that was substantially below the guidelines range of 36 to 47 months. (Tr. II at 107.) The prosecutor spoke with Zott in the hallway outside of the courtroom, Cushingberry arrived and the prosecutor said he would soon speak with Cushingberry about the plea offer. (Tr. II at 108.) Zott observed the prosecutor speak briefly with Cushingberry. (Tr. II at 108.) The prosecutor then informed Zott that Cushingberry said he was going to speak with Defendant about the plea. (Tr. II at 108.) Zott then saw Cushingberry walk down the hall towards the elevators before he turned a corner and was out of sight. (Tr. II at 108-09.)[3] About twenty or thirty minutes later, Cushingberry returned to the courtroom and Zott him heard tell the prosecutor that Defendant rejected the plea offer. (Tr. II at 109.)

Feia Murdoch, Defendant's fiancé and the mother of his child, attended the trial and spoke with Cushingberry on the second day. (Tr. I at 26-27, 29.) Cushingberry told her about a plea offer of 18-24 months that Defendant rejected. (Tr. I at 28.) Later, when she discussed the conversation with Defendant, he "was very surprised" to hear the terms of the offer. (Tr. I at 28.) She admitted that Defendant has lied in the past and that she was not present when Cushingberry met with him. (Tr. I at 29-32.)[4]

---

[3] Zott admitted that restrooms were also around the corner and that at times attorneys go to the lock-up area but cannot meet with clients because of a lack of available meeting space. (Tr. II at 110.)

[4] Defendant also presented the testimony of family members that in essence challenged Cushingberry's credibility by disputing his recollection of when he spoke with the family and by asserting that he admitted to misrepresenting the truth of an unrelated matter to the court. The court need not explicate this testimony in detail.

4

## II. STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Such motions, however, must demonstrate "the existence of a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure" in order for relief to be obtained. *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

## III. DISCUSSION

As a general rule, to establish ineffective assistance of counsel under the Sixth Amendment, a criminal defendant must show (1) that his counsel's performance was deficient such that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) that counsel's deficient performance prejudiced the criminal defendant by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000) ("To analyze ineffective assistance of counsel claims, this Circuit applies the two-pronged standard in *Strickland v. Washington*."). The Sixth Circuit has held that the *Strickland* analysis also applies to claims of ineffective assistance of counsel involving counsel's advice offered during the plea process. *Magana v.*

*Hofbauer,* 263 F.3d 542 (6th Cir. 2001).  Failure to inform a client of a plea offer is, if true, a serious enough error to satisfy *Strickland*.  *Arredondo v. United States,* 178 F.3d 778, 789-90 (6th Cir. 1999).

      The court is not persuaded that Defendant has proven by a preponderance of the evidence that Cushingberry's performance as counsel was deficient under *Strickland*.  Specifically, Defendant did not prove that Cushingberry failed to communicate a plea offer to him on the eve of trial.  The court bases its conclusion primarily on its view of the credibility of the several witnesses who testified at the evidentiary hearings.

      Cushingberry has practiced law for many years in state and federal court.  In both fora, attorneys know as a matter of course that a bedrock rule in any attorney-client relationship is that the attorney must present all specific plea offers or settlement offers to the client for consideration.  The sheer length of Cushingberry's career and the number of cases he has handled compel the court to conclude that he knows this rule.  Further, he testified convincingly that it is his routine practice or habit to immediately communicate an offer to a client.  He conveyed a specific recollection of going down to the lock-up area to communicate the offer, where Defendant rejected it.

      The court also credits the testimony of Agent Kevin Zott.  He directly witnessed interaction between the prosecutor and Cushingberry.  He also saw Cushingberry leave in the direction of the elevators, only to return about thirty minutes later to report that Defendant rejected the plea offer.  It is certainly possible that Cushingberry went elsewhere, perhaps to the restroom, or he appeared in the lock-up area only to be turned away.  But a possibility is not a probability.  The court concludes that, more likely than not, Cushingberry went to meet with his client to communicate the plea offer.

6

The evidence to the contrary is not persuasive. Defendant's testimony lacks credibility. A reduction in sentence is a powerful motive to lie. Defendant and those close to him admitted that he has a history of lying, particularly when he would seek to avoid responsibility for wrongdoing. Without unusually strong corroboration, Defendant's testimony is not convincing to the court.

Defendant's family members also presented problematic testimony. To a lesser degree, they have strong reason to want Defendant, their loved one, freed as soon as possible. Further, their knowledge as lay persons of criminal procedure and the rules governing plea offers is no doubt limited. As such, it is not difficult for the court to imagine that a misunderstanding between them and Cushingberry would arise, or perhaps a flawed interpretation of what he said at an admittedly stressful time for the family. Collateral attacks upon the credibility of Cushingberry cannot affirmatively prove Defendant's version of the story. In view of the totality of the testimony, the court believes that, at least concerning the communication of the plea offer, the testimony of Cushingberry and Zott ring truer.[5]

Finally, even if Defendant could win part of the credibility contest and establish deficient performance, he still cannot prove prejudice under *Strickland*. In the context of an uncommunicated plea offer, there must be a reasonable probability that the defendant would have pleaded guilty given competent advice. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). Again, the court is faced with a credibility contest between Defendant's assertion that he would have taken the plea and Cushingberry's

---

[5] Because Defendant bears the burden of proof and persuasion, he would lose even if the testimony on both sides was equally credible.

7

testimony that Defendant insisted on taking his chances for acquittal at trial. For the reasons given above, the court finds Cushingberry's testimony more credible. Even if the court assumes that Cushingberry failed to communicate the plea offer, the court still believes Cushingberry's assertion that Defendant was "adamant" that a trial would exonerate him. (Tr. I at 13.) Defendant has therefore failed to present adequate evidence supporting a reasonable probability that he would have accepted the plea offer.

## IV. CONCLUSION

IT IS ORDERED that Defendant's "Motion to Correct or Vacate Sentence as in Violation of Law Pursuant to 28 U.S.C. § 2255" [No. 01-80935, Dkt # 33] is DENIED.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: March 29, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 29, 2007, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522